E-FILED
Monday, 27 March, 2023  05:02:58 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cr-20065-SLD |
| | ) | |
| VALERIANO J. ZARATE, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

ORDER

Before the Court are Defendant-Petitioner Valeriano J. Zarate's *pro se* motion to compel, ECF No. 35, *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 36, and counseled Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 38. For the reasons that follow, the *pro se* motions are MOOT, and the Counseled 2255 Motion is DENIED.

**BACKGROUND**

On October 7, 2014, Zarate was indicted on one count of conspiracy to possess more than five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846. Indictment 1–3, ECF No. 1. Zarate retained attorney Baku Patel to represent him. *See* Not. Appearance, ECF No. 9.

On April 17, 2015, Zarate pleaded guilty to the charge against him pursuant to a written plea agreement. Apr. 17, 2015 Min. Entry; Plea Agreement, ECF No. 14. The parties agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that "the appropriate disposition of the case [wa]s for [Zarate] to be sentenced within the range of 188 to 235 months of imprisonment, followed by a five-year term of supervised release." Plea Agreement ¶ 19. This

agreement was based, in part, on the parties' understanding that Zarate had no prior felony drug convictions as defined by 21 U.S.C. § 802, *see id.* ¶ 17(d), which would increase Zarate's mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).  The parties agreed that if the Government discovered prior to sentencing that Zarate had a prior felony drug conviction, "either party ha[d] the option to declare the plea agreement null and void."  *Id.*

Prior to sentencing, the Government discovered that Zarate in fact had a prior felony drug conviction—a conviction for possession of more than 100 pounds of marijuana with intent to deliver in Arkansas.   Sentencing Agreement ¶ 5, ECF No. 23.  This meant that Zarate faced a mandatory minimum of twenty years of imprisonment and ten years of supervised release.  *Id.* (citing 21 U.S.C. § 841(b)(1)(A)).[1]  However, rather than declare the original plea agreement null and void, the parties superseded part of the plea agreement with a sentencing agreement. *See id.* ¶ 6.  In the sentencing agreement, the parties agreed that pursuant to Rule 11(c)(1)(C), "the appropriate disposition of the case [wa]s for [Zarate] to be sentenced to 20 years of imprisonment, followed by a ten-year term of supervised release."  *Id.* ¶ 7.

Pursuant to the plea and sentencing agreements, Zarate waived his right to appeal his sentence (with an exception for a claim of involuntariness or ineffective assistance of counsel) and his right to bring a motion pursuant to 28 U.S.C. § 2255 raising any claim other than a claim of ineffective assistance of counsel.  Plea Agreement ¶¶ 23–24; Sentencing Agreement ¶ 10. Judge Colin Bruce, then presiding over the case, sentenced Zarate to the agreed upon sentence of 240 months (twenty years) of imprisonment and ten years of supervised release on September 28, 2015.  Judgment 1–3, ECF No. 25.  Zarate did not appeal.

---

[1] 21 U.S.C. § 841(b)(1)(A) was subsequently amended and now provides for a fifteen-year mandatory minimum if the defendant commits the violation "after a prior conviction for a serious drug felony or serious violent felony has become final."

In March 2020, Zarate filed the motion to compel, requesting all *ex parte*
communications between Judge Bruce and the United States Attorney's Office for the Central
District of Illinois ("USAO"), Mot. Compel 1, and the *pro se* motion to vacate his sentence under
§ 2255, arguing that his due process rights were violated because Judge Bruce was biased against
him, *see* Pro Se 2255 Mot. 4–5;[2] Mem. Supp. Pro Se 2255 Mot. 2–7, ECF No. 36-1.  These
motions were prompted by the USAO's disclosure of *ex parte* communications between Judge
Bruce and employees of the USAO.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th
Cir. 2019) (providing an explanation of the discovery and disclosure of the communications).
The case was reassigned to this Court, *see* Mar. 20, 2020 Text Order, and the Court appointed
the Federal Public Defender ("FPD") to represent Zarate, *see* Mar. 27, 2020 Text Order.

The FPD filed the Counseled 2255 Motion on May 18, 2020, *see* Counseled 2255 Mot.
36, mooting the previously filed *pro se* motions.  The Counseled 2255 Motion asserts two
claims: 1) that Judge Bruce was actually biased in favor of the Government and thus his
presiding over Zarate's case violated Zarate's due process rights, *id.* at 29–33; and 2) that Judge
Bruce violated 28 U.S.C. § 455(a)[3] by failing to recuse himself, *id.* at 33–35.

The Government filed a response arguing that: 1) Zarate waived his right to bring a
§ 2255 motion in his plea and sentencing agreements; 2) his claims are untimely; 3) his § 455(a)
claim is not cognizable on a motion under § 2255; and 4) he "can show no actual bias or
appearance of bias, especially where the sentencing judge merely imposed the exact sentence
that Zarate asked [him] to impose."  Resp. 1, ECF No. 46.  Zarate filed a reply responding to
each argument.  *See generally* Reply, ECF No. 49.  Subsequently, he filed a notice of

---

[2] Because the Pro Se 2255 Motion is inconsistently paginated, the Court uses the page numbers generated by
CM/ECF.
[3] Throughout the briefing Zarate refers to 18 U.S.C. § 455(a), *see, e.g.*, Counseled 2255 Mot. 33, which is
presumably a typographical error.  No such statute exists.

3

supplemental authority.  *See* Not. Suppl. Authority, ECF No. 50 (pointing the Court to a Seventh

Circuit case regarding due process bias claims).

## DISCUSSION

### I.      Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the

sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C.

§ 2255(a)).

### II.     Analysis

#### A.  Collateral Review Waiver

First, the Government argues that Zarate's claims are barred by the collateral review

waiver in his plea and sentencing agreements.  Resp. 8–10.  "It is well-settled that waivers of

direct and collateral review in plea agreements are generally enforceable."  *Hurlow v. United*

*States*, 726 F.3d 958, 964 (7th Cir. 2013).[4]  If a collateral review waiver is voluntary and

knowing, it is generally enforceable.  *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).

"There are only limited instances when [the court] will not enforce a knowing and voluntary

---

[4] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly.  *See, e.g.*, *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

waiver of . . . collateral review." *Id.*  Waivers are unenforceable, for example, if "the district

court relied on a constitutionally impermissible factor (such as race)" in determining the sentence

or "the sentence exceeded the statutory maximum." *Keller v. United States*, 657 F.3d 675, 681

(7th Cir. 2011) (quotation marks omitted).  Waivers are also unenforceable "against claims that

counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964.

There are also "at least some due process exceptions to a waiver." *United States v. Adkins*, 743

F.3d 176, 192 (7th Cir. 2014).  For example, a waiver "will not prevent a defendant from

challenging . . . deprivation of some minimum of civilized procedure (such as if the parties

stipulated to trial by twelve orangutans)." *Id.* (quotation marks omitted).

Zarate does not argue the waiver was unknowing or involuntary or that his claims do not

fall within the waiver's scope.  *See* Reply 1–2.  Instead, he contends that the waiver is

unenforceable because 1) his "bias claim . . . meets the due process exception to . . . collateral

attack waivers" and "the failure to recuse under § 455(a) . . . calls into question fundamental

fairness to [him] and the legitimacy of the judiciary" and thus should also be excepted from the

waiver, *id.*, and 2) "the government is . . . prohibited from enforcing the collateral attack waiver

under the equitable doctrine of unclean hands," *id.* at 2.

The Court finds neither of Zarate's arguments persuasive.  First, though "[d]ue process

guarantees an absence of actual bias on the part of a judge," *Williams v. Pennsylvania*, 579 U.S.

1, 8 (2016) (quotation marks omitted), not all due process claims are excepted from collateral

review waivers.  Zarate cites no cases finding an exception for judicial bias claims.  And other

courts have enforced waivers against judicial bias claims. *See United States v. Carver*, 349 F.

App'x 290, 292–94 (10th Cir. 2009); *Anderson v. United States*, No. CV 12-1025 MCA/WPL &

CR 10-0086 MCA, 2013 WL 12164686, at *5–6 (D.N.M. Mar. 7, 2013), *adopted by* 2015 WL

12859352, at *3–4 (D.N.M. Aug. 17, 2015). Zarate also cites no support for the proposition that

the due process exception to collateral review waivers would encompass a statutory claim for

violation of 28 U.S.C. § 455(a) based on an appearance of impropriety. Second, Zarate's

unclean hands argument is underdeveloped. He cites no cases applying the unclean hands

doctrine to plea agreements and does not develop the facts about who in the USAO knew that

USAO employees were engaging in *ex parte* contact with Judge Bruce, when they knew it, or

how the misconduct relates to Zarate's waiver. *See United States v. Lanzotti*, 205 F.3d 951, 957

(7th Cir. 2000) ("It is not th[e] court's responsibility to research and construct the parties'

arguments.").

Nevertheless, as explained below, the Court would deny Zarate's arguments on the merits

even if there were no collateral review waiver.

## B. Timeliness

As the Government also argues Zarate's claims are untimely, the Court will address

timeliness before proceeding to the merits. *See* Resp. 10–11. The parties agree that the relevant

statute of limitations is 28 U.S.C. § 2255(f)(4), which allows a prisoner to file a § 2255 motion

within one year of "the date on which the facts supporting the claim or claims presented could

have been discovered through the exercise of due diligence." *See* Resp. 11; Reply 4. The

Government argues the relevant date for § 2255(f)(4) is September 20, 2018, when the USAO

sent a letter to Zarate's former counsel Patel informing him of the *ex parte* communications

between Judge Bruce and the USAO. *See* Resp. 11; Sept. 20, 2018 Letter, Resp. Ex. A, ECF No.

46-1. As Zarate's motions under § 2255 were not filed until 2020, the Government contends

they are untimely. Resp. 11. Zarate argues that the relevant date for § 2255(f)(4) is the date *he*

received a letter from the USAO dated March 19, 2019 notifying him of the *ex parte*

6

communications.  Reply 4; Mar. 19, 2019 Letter, Reply Ex. A, ECF No. 49-1.  He argues that the

letter to Patel did not trigger the § 2255(f)(4) limitations period because there is no evidence that

Patel informed him of the letter's contents and there is no evidence there was an attorney-client

relationship between him and Patel at that time.  Reply 3–4.

   The Court agrees with Zarate.  Though "[u]nder ordinary circumstances . . . a lawyer's

knowledge is attributed to her client," *Wood v. Spencer*, 487 F.3d 1, 5–6 (1st Cir. 2007)

(applying this principle to the similar statute of limitations in 28 U.S.C. § 2244(d)(1)(D)), there

is no evidence Patel was acting as Zarate's attorney at the time the letter was sent.  Zarate was

sentenced on September 28, 2015 and did not appeal.  The letter was not sent until September

2018, three years later and far after the time to appeal passed.  Zarate had no right to counsel at

that time, *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in

postconviction proceedings . . . ." (citation omitted)), and the Government makes no argument as

to why an attorney-client relationship continued to exist.  *See Ray v. Clements*, 700 F.3d 993,

1006 (7th Cir. 2012) ("Generally, the party raising an affirmative defense bears the burden of

proof.  The same is true in the habeas context." (citation omitted)).  The Government also

provides no evidence that Patel informed Zarate of the letter's contents.

   The Government makes no argument that Zarate could have learned of the *ex parte*

communications by any method other than being informed by the USAO.[5]  Thus, the Court finds

that the relevant date for § 2255(f)(4) is the date Zarate received the March 19, 2019 letter.

---

[5] For example, the Government does not argue that news articles or Judge Bruce's removal from criminal
proceedings would have put Zarate on inquiry notice, such that he should have determined whether these
communications existed.  *See Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013) ("The dependence of the
statute of limitations on the petitioner's exercise of due diligence is equivalent to a rule of inquiry notice." (quotation
marks omitted)).  The Court doubts that they would because there is no indication that Zarate would have been
aware of them.

The Court has no evidence of when Zarate received the letter. Nevertheless, the evidence shows that the Pro Se 2255 Motion was mailed to the Court within one year of March 19, 2019, so the Court concludes that the motion was timely filed. *See* Rule 3(d), Rules Governing § 2255 Proceedings ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."). Zarate states that his motion was placed in the prison mailing system on March 12, 2020. Pro Se 2255 Mot. 12.[6] The envelope is postmarked March 17, 2020. Envelope, ECF No. 36-3. And although the § 455(a) claim was added in the Counseled 2255 Motion, that claim relates back to the filing of the Pro Se 2255 Motion as it arises out of the same set of facts as the due process claim. *See Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002). Accordingly, the Court finds that both of Zarate's claims are timely.

### C. Merits of Claims

Both the due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that came to light in 2018, three years after Zarate was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). Zarate argues that these communications—among other documents and information—demonstrate that Judge Bruce was biased against him, violating his due process rights, and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under § 455(a). *See* Counseled 2255 Mot. 29–35.

---

[6] Though Zarate did not sign the line under this statement, he signed the motion elsewhere. *See* Pro Se 2255 Mot. 12.

8

### 1. Due Process

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  Zarate primarily relies on the same communications that were relied on in *Williams*

9

and considered by the Special Committee, and he points to no emails that concern his case

specifically.  *See* Counseled 2255 Mot. 3–29.[7]

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's

sentencing hearing, as opposed to only his trial, may warrant a different result under the due

process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at

884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could

have been interpreted as a warning that if the defendant appealed, he would impose a harsher

sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due

process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte*

communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue

and instead remanding for resentencing under the court's supervisory authority).  Here, there is

no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased

against Zarate.  Moreover, Judge Bruce sentenced Zarate to the sentence he bargained for and

requested.

Zarate argues that *Williams* does not dictate the result of his case.  *See* Reply 11–12.  (He

does not address *Shannon*, which was decided after the briefing was completed in this case.)  He

argues that he has presented additional evidence that warrants an evidentiary hearing to further

explore any potential bias by Judge Bruce.  *See id.* at 12; Counseled 2255 Mot. 31–33.  He also

argues that the Government cannot assert collateral estoppel based on the Seventh Circuit

Judicial Council's resolution of the misconduct complaints filed against Judge Bruce, Reply 7–

---

[7] The Government identified one email chain between Judge Bruce and a staff member of the USAO that pertained to Zarate's case.  *See* Resp. 5.  Paralegal Staci Klayer sent Judge Bruce the sentencing agreement the morning of the sentencing hearing.  Sept. 28, 2015 Klayer Email, ECF No. 46-1 at 3–10.  Judge Bruce responded, "Monarch Butterfly?"  Bruce Resp., ECF No. 46-1 at 11.  Klayer replied, "Giraffe."  Klayer Reply, ECF No. 46-1 at 12.  The Court does not understand the response and reply, but nothing in these emails suggests any bias against Zarate.

11, and that it is unfair to him if the Court is "bound" by those proceedings as he could not participate in them, Counseled 2255 Mot. 32–33.

The Court agrees that the Seventh Circuit cases and the Judicial Council's resolution do not "conclusively foreclose[]" a finding of actual bias as the Government suggests, *see, e.g.*, Resp. 20, but instead finds that the evidence Zarate has submitted is sufficiently similar to the evidence at issue in *Williams* such that the same holding—that Zarate fails to demonstrate actual bias or a risk of bias so high that it violates due process—is warranted.  The additional evidence Zarate submits to the Court consists of emails between Assistant United States Attorney ("AUSA") Tim Bass and the Department of Justice's Office of Inspector General ("OIG") and a memorandum paralegal Lisa Hopps wrote for the Deputy Director for the Executive Office for United States Attorneys ("EOUSA").  *See* Counseled 2255 Mot. 24–29.[8]  He argues that this evidence shows that Judge Bruce "act[ed] as management of the USAO," was "vindictive" toward Bass, *id.* at 31–32, and was willing "to act on his biases," *id.* at 24.[9]

---

[8] Zarate did not attach these documents to his motion but rather cites to them from the docket of *United States v. Nixon*, No. 2:15-cr-20057-JES-JEH (C.D. Ill.).  Cites to this docket will take the form: Nixon ECF No. __.

[9] The following is a summary of this evidence.

On December 5, 2017, Bass sent an email with the subject line "Follow-up" to OIG (which suggests this was not his first contact with OIG).  *See* Dec. 5, 2017 12:32 PM Bass Email, Nixon ECF No. 213-3 at 9.  He indicated that he could provide information to OIG about Judge Bruce's "repeated contact" with the current and past Acting United States Attorneys for the Central District of Illinois Patrick Hansen and John Childress.  *Id.*  Later that day, Bass forwarded to OIG an email chain between himself, Hansen, and Childress, adding an explanation that on November 16, 2017, Judge Bruce contacted Childress by phone and less than an hour later Childress was sworn in as Acting United States Attorney; that same evening, Hansen informed a paralegal that he did not want to be assigned to *United States v. Shock*, No. 3:16-cr-30061 (C.D. Ill.); and Hansen and Childress both told the paralegal that they thought Judge Bruce was hostile to Bass.  Dec. 5, 2017 1:53 PM Bass Email, Nixon ECF No. 213-1 at 37–40.  He followed up the next day with an email to OIG stating that Judge Bruce had had repeated *ex parte* contact with Hansen and Childress and that Judge Bruce singled Bass out for providing a false and misleading response in *Shock* that was authored by Hansen, Bass, and another AUSA.  Dec. 6, 2017 5:48 PM Bass Email, Nixon ECF No. 213-1 at 32–36.  Bass had a call with OIG that day.  *See* Dec. 6, 2017 9:01 PM Bass Email, Nixon ECF No. 213-1 at 30–32 (referencing a call).  He followed up with an email to which he attached emails between Hopps and Judge Bruce which Bass believed showed a personal bias against Bass and Judge Bruce's willingness to engage in inappropriate *ex parte* contacts with the USAO about pending cases.  *See id.*  Bass stated his belief that "there [we]re reasonable grounds for OIG to review whether Mr. Hansen and Mr. Childress and Judge Bruce engaged in a concerted effort . . . to undermine and sabotage" the *Shock* case (a high-profile case), to cause Bass to be removed from the *Shock* case, and to interfere with the United States Attorney selection process.  *Id.*

11

The Court finds that this is simply more of the same type of evidence that the Seventh

Circuit found failed to establish a due process violation in *Williams*.  It shows that Judge Bruce

had relationships with people in the USAO and suggests that he had *ex parte* communications

with them.  *See Williams*, 949 F.3d at 1062.  And it could show that Judge Bruce was biased

against Bass.  But it does not include any concerning communications regarding Zarate's case or

suggest that Judge Bruce's *ex parte* communications had an impact on his case.  *See id.*

 The Court thus finds that Zarate has failed to show either actual bias or a risk of bias so

high that it violates due process.  The due process claim is denied.

### 2.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned."  The Government does not assert a position as

to whether Judge Bruce violated § 455(a), *see* Resp. 21 ("[W]hether or not Judge Bruce violated

28 U.S.C. § 455(a) by failing to recuse himself . . . ."), but argues that the statutory recusal claim

is not cognizable on collateral review, *id.* at 12–16, and that even if an appearance of bias could

be cognizable, a new sentencing would not be warranted here, *id.* at 21–24.

Section 2255 "was intended to afford federal prisoners a remedy identical in scope to

federal habeas corpus."  *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the

language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in

violation of the "laws of the United States," § 2225(a), not "every asserted error of

---

On August 13, 2018, Hopps provided a memorandum to the Deputy Director of the EOUSA about the
*Shock* case.  Hopps Mem., Nixon ECF No. 213-6.  She stated that Judge Bruce "disparag[ed] [Bass] and his chances
to become a magistrate judge" while on the phone with Hopps.  *Id.* at 3.  She stated that in another conversation,
Judge Bruce told her that Bass "wouldn't even make it out of committee," which he did not.  *Id.*  She reported that
Judge Bruce had close relationships with Hansen and Childress and that many in the USAO were "aware of [Judge
Bruce's] dislike of [Bass]."  *Id.*  Finally, she reported that Judge Bruce had "been unable to disconnect himself from
[their] office" and that it was like he was "a silent part of management."  *Id.*

[nonconstitutional] law can be raised on a § 2255 motion," *Davis*, 417 U.S. at 346. The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[10]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[11] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[12]

---

[10] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.
[11] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.
[12] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed

without deciding "that as a general matter collateral attack upon a criminal sentence may be

available under section 2255 to pursue a claim of appearance of impartiality."  It made this

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition*

*Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure

60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under

§ 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief

from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks

omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it
> is appropriate to consider the risk of injustice to the parties in the particular case,
> the risk that the denial of relief will produce injustice in other cases, and the risk of
> undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of

impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*,

878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would

similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption

that it would "for purposes of [that] appeal."  *Id.*  The only dispositive holding from the Second

Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

---

Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions
warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety
do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by
resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the
facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make
explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or
warranted under § 2255.

because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Zarate has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Zarate's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed]

[the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)).

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

It suffices to say here that Zarate was sentenced to exactly what he asked for—240 months of imprisonment followed by ten years of supervised release. He has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255, so it is denied.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Zarate has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Valeriano J. Zarate's *pro se* motion to compel, ECF No. 35, and *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 36, are MOOT.  The counseled Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 38, is DENIED.  The Clerk is directed to enter judgment on the § 2255 motions and close the accompanying civil case, No. 2:20-cv-02069-SLD.

Entered this 27th day of March, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE